**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DEAN ZINETTI and ANGELA K. ZINETTI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 19-1279-LPS-JLH |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY, as TRUSTEE FOR SAXON | ) | |
| ASSET SECURITIES TRUST 2007-3, | ) | |
| MORTGAGE LOAN ASSET BACKED | ) | |
| CERTIFICATES, SERIES 2007-3 and OCWEN | ) | |
| LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiffs Dean and Angela K. Zinetti ("Plaintiffs") filed this action against Deutsche Bank National Trust Company ("Deutsche Bank") and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "Defendants") in the Superior Court for the State of Delaware on June 3, 2019. Plaintiffs' Complaint alleges violations of the Real Estate Settlement Procedures Act ("RESPA") and the Fair Debt Collection Practices Act ("FDCPA"), breach of contract, and other state law claims, all of which relate to the servicing of Plaintiffs' home mortgage loan. Defendants removed the case to this Court on July 9, 2019. (D.I. 1.)

Pending before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim. (D.I. 6.) I recommend that the motion be GRANTED-IN-PART and DENIED-IN-PART.

## I.    BACKGROUND[1]

On May 10, 2007, Plaintiffs obtained a home mortgage loan from Saxon Mortgage, Inc. ("Saxon").  (D.I. 1 ("Cmpl.") ¶¶ 1, 8.)  Plaintiffs executed and delivered a note (the "Note") and a mortgage on the Property (the "Mortgage") to Saxon.  (*Id.* ¶ 8.)  A Saxon affiliate, Saxon Mortgage Services, Inc. ("SMS"), was the initial loan servicer.  (*Id.* ¶ 9.)

In February 2010, Plaintiffs entered into a Home Affordable Modification Agreement with Deutsche Bank, pursuant to the Home Affordable Modification Program ("HAMP").[2]  (*Id.* ¶ 14.)  The HAMP modification changed the terms of the loan and modified Plaintiffs' principal and interest payments, as well as their escrow account[3] payments. (*Id.* ¶¶ 15-16.)  At some point, Deutsche Bank also became the record owner of the Mortgage.  (*Id.* ¶ 14.)

On December 15, 2010, SMS issued an escrow statement to Plaintiffs, which showed erratic credits to Plaintiffs' escrow account even though Plaintiffs made on-time payments each month.  (*Id.* ¶ 18, D.I. 24 at 92-94 (Ex. F).)  In January 2011, SMS sent Plaintiffs a letter indicating that Plaintiffs were in compliance with the terms and conditions of the HAMP modification, including the monthly escrow payments.  (Cmpl. ¶ 21.)  However, despite Plaintiffs' continued payments in accordance with the HAMP modification, SMS sent Plaintiffs an April 1, 2011 mortgage loan statement stating that Plaintiffs were delinquent.  (*Id.* ¶ 22.)

---

[1] I assume the facts alleged in the Complaint to be true for purposes of resolving the motion to dismiss for failure to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] HAMP is a federal program designed to help struggling homeowners avoid foreclosure by modifying loans to include more affordable terms.  (*Id.* ¶ 13.)

[3] An escrow account is an account established for the payment of property taxes and insurance premiums.  The account is funded by escrow payments that are billed to the borrower along with the principal and interest payments.  *See* 12 U.S.C. § 2602(g); 12 C.F.R. § 1024.17.

On May 17, 2011, Ocwen took over the servicing of Plaintiffs' loan. (*Id.* ¶ 23.) Two days later, Ocwen sent Plaintiffs a mortgage loan statement with numerous errors, including a negative escrow account balance and over $16,000 listed as past due. (*Id.* ¶ 24.) In July 2011, Ocwen refused and returned Plaintiffs' mortgage payment. (*Id.* ¶ 25.)

Plaintiffs subsequently sought assistance from counsel to help them get their account information corrected. (*Id.*) After months of back and forth with Ocwen, Plaintiffs filed suit against Ocwen and SMS on January 23, 2012. (*Id.* ¶ 28; C.A. No. S12C-01-028 THG (Del. Super.).) In late 2012, the parties agreed to enter into a settlement agreement, which was executed by March 6, 2013 at the latest ("Settlement Agreement"). (*Id.* ¶¶ 30-33.) In the Settlement Agreement, Ocwen and SMS acknowledged that Plaintiffs "were not in fact delinquent." (*Id.* ¶ 30; *see also* Tr. 27:21-28:7.) Under the Settlement Agreement, Ocwen agreed to perform an account reconciliation and to adjust Plaintiffs' account balance and monthly payments to reflect the reconciliation. (*Id.* ¶ 31.) The Settlement Agreement also required Ocwen to remove any charges assessed solely by reason of a claimed, but inaccurate, delinquency. (*Id.* ¶ 31.) SMS and Ocwen also agreed to update their credit reporting to reflect that Plaintiffs were not in default between January 2010 and the effective date of the Settlement Agreement. (*Id.* ¶ 32.)

Following the Settlement Agreement, Ocwen continued to send statements with incorrect information and an erroneous negative escrow account balance. (*Id.* ¶ 34.) For example, on March 7, 2013, Ocwen sent Plaintiffs an annual escrow account statement listing a shortage of over $3,000 in Plaintiffs' escrow account and seeking additional payments from Plaintiffs to make up for the alleged shortage. (*Id.* ¶ 35.) Ocwen also failed to furnish an accurate reconciliation of Plaintiffs' escrow account and failed to inform credit reporting agencies that Plaintiffs were not delinquent on their loan. (*Id.* ¶¶ 34, 40.)

Plaintiffs continued to make their regular monthly payments (without the inflated amounts) and sought the assistance of counsel from Legal Services Corporation of Delaware, Inc. (*Id.* ¶ 36.) On July 18, 2014, Plaintiffs' counsel sent Ocwen a letter explaining that the account reconciliation had not been completed and that the inaccuracies in the escrow account were causing the mortgage to be in default and accrue late fees. (*Id.* ¶ 37.) The letter also requested an escrow account history and payment account history. (*Id.*)

Ocwen responded on September 10, 2014 with inaccurate information about the escrow account and an erroneous payment reconciliation history. (*Id.* ¶¶ 38-39.) In July 2015, Ocwen began holding Plaintiffs' monthly payments in suspense, eventually returning them to Plaintiffs and threatening foreclosure. (*Id.* ¶ 41.) Ocwen subsequently refused to accept further monthly payments, and it told Plaintiffs that they would have to pay off all (inaccurate) outstanding balances before the loan would be reinstated. (*Id.*)

Because Ocwen refused to accept their payments, Plaintiffs stopped making them, but they continued to try to get Ocwen to correct the errors. (*Id.* ¶ 43.) Between July 2014 and November 30, 2018, Plaintiffs, through counsel, sent Ocwen at least seven notices of error and requests for information, all to try to get Ocwen to correct Plaintiffs' account records. (*Id.* ¶ 44.) Ocwen denied any errors and sent copies of payment history reports with inaccuracies. (*Id.*)

Plaintiffs have suffered harm as a result of Ocwen's errors. Ocwen's actions have negatively affected Plaintiffs' credit rating, causing them to be denied credit and causing anxiety and stress. (*Id.* ¶¶ 40, 47.) The errors have also resulted in Plaintiffs' account being charged fees for late or delinquent payments. (*Id.* ¶¶ 35, 65.)

The Complaint also states that Ocwen was sued in 2017 by the United States Consumer Financial Protection Bureau, which alleged that Ocwen had repeatedly "improperly calculated loan

balances, misapplied borrower payments, failed to correctly process escrow and insurance payments, and failed to properly investigate and make corrections in response to consumer complaints." (*Id.* ¶ 46 (citing *Consumer Financial Protection Bureau v. Ocwen Fin. Corp.*, No. 9:17-cv-80495 (S.D. Fl.)).)

Plaintiff's Complaint contains ten counts, styled as follows: "Failure to Comply with Annual Escrow Account Statement Requirements Under RESPA" (Count I); "Failure to Accurately Respond to Notices of Error and Requests for Information" under RESPA (Count II); "Unfair Practices" under the FDCPA (Count III); "Failure to Cease Collections on Disputed Debt" under the FDCPA (Count IV); "Failure to Report Debt as Disputed Debt to Credit Reporting Bureaus" under the FDCPA (Count V); "Breach of Contract" (Count VI); "Fraud or Intentional Misrepresentation" (Count VII); "Ocwen's Negligent Servicing of the Loan" (Count VIII); "Breach of Implied Covenant of Good Faith and Fair Dealing" (Count IX); and "Unjust Enrichment" (Count X).

Defendants Deutsche Bank and Ocwen filed the pending motion to dismiss on July 19, 2019 (D.I. 6), and briefing was complete on August 16, 2019 (D.I. 11). Plaintiff requested oral argument (D.I. 12), and I heard oral argument on January 17, 2020. ("Tr. _".)

## II.  LEGAL STANDARDS

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III. DISCUSSION

### A. RESPA (Counts I and II)

RESPA is a federal statute that governs mortgage loans insured by the federal government. 12 U.S.C. §§ 2601-17. It "is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans, and imposes duties on lenders and loan servicers." *Gunn v. First Am. Fin. Corp.*, No. CV 13-174-RGA, 2014 WL 2445750, at *3 (D. Del. May 30, 2014). Regulation X is RESPA's implementing regulation. 12 C.F.R. §§ 1024.1-1024.41.

> #### 1. Count I should be dismissed because there is no private right of action for violations of 12 U.S.C. § 2609 and 12 C.F.R. § 1024.17.

Count I of Plaintiff's Complaint alleges that Defendants failed to comply with 12 U.S.C. § 2609(c) and 12 C.F.R. § 1024.17, which require mortgage servicers to send annual escrow account statements that contain certain information. Defendants argue that Count I should be dismissed because there is no private right of action under that statute and regulation. Plaintiffs conceded the issue at oral argument (Tr. 50:12-51:8), and I agree that Defendants are correct.

Courts considering the issue have concluded that there is no private right of action under 12 U.S.C. § 2609. *See McAndrew v. Deutsche Bank Nat. Tr. Co.*, 977 F. Supp. 2d 440, 446 (M.D. Pa. 2013) (collecting cases); *see also Cybulski v. Nationstar Mortg. LLC*, No. 17-CV-03711, 2018 WL 4144632, at *4 (N.D. Ill. Aug. 30, 2018) (collecting cases). Those courts recognize that, unlike other provisions of RESPA, which specifically authorize private actions in the case of a

violation, § 2609 only refers to enforcement actions by "the Secretary."[4] *Compare, e.g.,* 12 U.S.C.

§§ 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the

borrower . . ."), 2607(d)(5) ("In any private action brought pursuant to this subsection . . ."), *with*

12 U.S.C. § 2609 ("In the case of each failure to submit a statement to a borrower as required

under subsection (c), the Secretary shall assess to the lender or escrow servicer failing to submit

the statement a civil penalty of $50 for each such failure . . . ."); *see also McAndrew*, 977 F. Supp.

2d at 447. Courts also rely on the fact that 12 U.S.C. § 2614 sets forth the limitations period for

private actions brought pursuant to §§ 2605, 2607, and 2608, but it does not reference § 2609. *See*

*McAndrew*, 977 F. Supp. 2d at 447. I agree with the reasoning of those courts.

Section 2609 is implemented by 12 C.F.R. §1024.17, which courts have likewise concluded

does not authorize a private right of action. *See, e.g.*, *Cybulski*, 2018 WL 4144632, at *3-4

("Although there is limited case law discussing the application of 12 C.F.R. § 1024.17, it does not

appear from the legislative history that Congress intended to create a private right of action for

enforcement of this regulation."); *Satterfeal v. LoanCare, LLC*, No. CV 18-1021-JWD-EWD,

2019 WL 2857993, at *3 (M.D. La. July 2, 2019) (concluding that there is no private right of action

for violations of 12 C.F.R. § 1024.17); *McCray v. Bank of Am., Corp.*, No. CV ELH-14-2446,

2017 WL 1315509, at *14-15 (D. Md. Apr. 10, 2017).

Accordingly, I recommend that Count I be dismissed as to both Defendants.

### 2. Count II states a claim under RESPA against Ocwen.

Count II alleges that Defendant Ocwen failed to properly respond to Plaintiffs' notices of

error and requests for information as required under 12 U.S.C. § 2605(e) and the corresponding

---

[4] Section 2602 of Title 12 defines "Secretary" as the Secretary of Housing and Urban
Development. Pursuant to 12 U.S.C. § 5581, the Secretary's "consumer financial protection
functions" under RESPA have been transferred to the Consumer Financial Protection Bureau.

provisions of Regulation X, 12 C.F.R. §§ 1024.35, 1024.36. Ocwen does not dispute that there is a private right of action under those provisions. But Ocwen makes several arguments as to why Count II nevertheless fails to state a claim. I reject all of them.

Section 2605 of Title 12 sets forth RESPA's requirements for the "[s]ervicing of mortgage loans and administration of escrow accounts." 12 U.S.C. § 2605. Subsection 2605(e) requires loan servicers to respond to certain borrower inquiries, referred to as "qualified written requests," that request information from the servicer or that assert an error with respect to the account. 12 U.S.C. § 2605(e)(1). RESPA and Regulation X further detail the specific actions a loan servicer must take upon receipt of a notice of error or request for information. 12 U.S.C. § 2605(e); 12 C.F.R. §§ 1024.35 (notice of error), 1024.36(a) (request for information). For notices of error, the loan servicer must generally either correct the error or "conduct[] a reasonable investigation" and determine that no error occurred. 12 C.F.R. § 1024.35(e)(1)(i). Suits under RESPA alleging violations of a loan servicer's duty to act on a notice of error or request for information are governed by a three-year statute of limitations. 12 U.S.C. § 2614.

Ocwen contends that some of its responses to Plaintiffs' qualified written requests fall outside the three-year limitations period and are therefore not actionable under RESPA. As for Ocwen's responses that do fall within the limitations period—including at least its responses to Plaintiffs' June 20, August 27, and November 30, 2018 notices of error—Ocwen argues that it had no duty to respond because those notices were duplicative of earlier notices (the responses to which fall outside the limitations period).

Ocwen is correct that RESPA and Regulation X do not require it to respond to a duplicative notice of error or request for information. For example, under 12 C.F.R. § 1024.35(g), a loan servicer is not required to conduct a reasonable investigation if it "reasonably determines" that

"[t]he asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond." 12 C.F.R. § 1024.35(g)(1)(i). However, Regulation X requires a loan servicer to notify the borrower if the servicer determines that it need not respond to a request because it is duplicative. 12 C.F.R. § 1024.35(g)(2) (duplicative notice of error); *see also* 12 C.F.R. § 1024.36(f)(2) (duplicative request for information).

In this case, Ocwen treated at least one of Plaintiffs' requests within the limitations period as non-duplicative. Ocwen's September 25, 2018 response to Plaintiffs' August 27, 2018 notice of error does not state that the notice was duplicative. (D.I. 24 at 307-327 (Ex. Y-i-iii).) Instead, it states that Plaintiffs' "letter is a 'qualified written request' in compliance with" RESPA. (*Id.* at 323.) At oral argument, counsel for Ocwen acknowledged that a mortgage servicer must notify a borrower in accordance with 12 C.F.R. § 1024.35(g)(2) that it has determined that it need not respond to a notice of error; otherwise, it must conduct a reasonable investigation in accordance with 12 C.F.R. § 1024.35(e). (Tr. 16:7-17:20.) Accordingly, Ocwen was required to conduct a reasonable investigation at least as to Plaintiff's August 27, 2018 notice of error.

The Complaint plausibly alleges that Ocwen failed to conduct a reasonable investigation in response to Plaintiffs' August 27, 2018 notice of error. Ocwen's September 25, 2018 response states that Ocwen acquired the servicing rights to Plaintiffs' loan from SMS in 2011 with a "negative escrow balance of $4,383.33"—notwithstanding the allegations in the Complaint (which I must accept as true) that Ocwen agreed in the Settlement Agreement that Plaintiff's account was current as of 2013. (Cmpl. ¶ 30; Tr. 27:21-28:7.) As alleged, those facts lead to a plausible inference that Ocwen failed to perform a reasonable investigation in response to the August 27,

2018 notice of error.[5]  *See Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 804–07 (E.D. Pa. 2014) (complaint plausibly alleged RESPA violation where defendant sent contradictory responses to plaintiff's request for information and notice of error, suggesting that defendant failed to conduct a "reasonable investigation"); *Alfaro v. Wells Fargo N.A.*, C.A. No. 16-7950 (ES) (MAH), 2017 WL 4969334, at *5 (D.N.J. Nov. 1, 2017).

Ocwen also contends that Count II must be dismissed because Plaintiffs failed to plausibly allege damages.  Again, I disagree.  RESPA permits two types of damages for violations of 12 U.S.C. § 2605(e): (1) actual damages suffered by a borrower "as a result of the" violation; and (2) statutory damages if the borrower can demonstrate "a pattern or practice of noncompliance."  A plaintiff must plausibly allege at least one type of damages to maintain a claim under 12 U.S.C. § 2605(e).  *Bukowski v. Wells Fargo Bank, N.A.*, 757 F. App'x 124, 127–28 (3d Cir. 2018).

In this case, Plaintiffs have plausibly alleged actual damages.  The attachments to the Complaint show that Plaintiffs paid postage fees to send notices of error to Ocwen.  (*See, e.g.*, D.I. 24 at 285 (postage receipt for June 11, 2018 letter), 308 (August 27, 2018 letter sent via "Certified Mail").)  At oral argument, Defendants acknowledged that postage fees to send a non-duplicative notice of error are "actual damages" within the meaning of the statute.  (Tr. 20:2-22:2.)  *See Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 728 (S.D. Ohio 2014) (holding that postage fees for mailing a qualified written request "metamorphosed into damages" when the servicer failed to respond as required by RESPA).  Counsel also acknowledged that damages based on harm to the borrower's credit are also recoverable, as are emotional damages where there are other pecuniary damages.  (Tr. 18:2-12, 22:13-20.)  The Complaint alleges that Ocwen's actions have caused

---

[5] Because I conclude that at least one of Ocwen's responses falls within the limitations period, I do not address Plaintiffs' argument that some of the alleged violations are subject to equitable tolling.  The parties may re-raise the issue at the summary judgment stage.

Plaintiffs to be denied credit and that they have suffered emotional distress in the form of stress and anxiety. (Cmpl. ¶ 47.) All of those may result in actual damages recoverable under RESPA. 12 U.S.C. § 2605(f) (permitting recovery of "any actual damages to the borrower"); *see Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693-696 (7th Cir. 2011) (denying defendant's motion for summary judgment regarding existence of actual damages where plaintiff was denied credit and suffered emotional distress).

Plaintiffs have also adequately alleged a "pattern or practice" of non-compliance by Ocwen, which, if proven, would entitle them to statutory damages. While the parties dispute whether violations as to a single borrower can amount to a "pattern or practice" within the meaning of the statute, at oral argument Ocwen acknowledged that a Complaint plausibly alleges a pattern or practice if it references another case in which a plaintiff alleged that the loan servicer committed similar RESPA violations. (Tr. 24:3-26:22.) Plaintiffs' Complaint does that. Paragraph 46 alleges that Ocwen was sued in 2017 by the Consumer Financial Protection Bureau, which alleged that Ocwen (among other things) "failed to properly investigate and make corrections in response to consumer complaints." (Cmpl. ¶ 46 (citing *Consumer Financial Protection Bureau v. Ocwen Fin. Corp.*, No. 9:17-cv-80495, D.I. 1, ¶¶ 1, 163-176 (S.D. Fl.).). Accordingly, I conclude that the Complaint also sufficiently alleges statutory damages as a result of a pattern or practice of non-compliance.[6]

---

[6] Moreover, Defendants' counsel acknowledged at oral argument that, even if the Court dismissed Count II on the basis that it failed to adequately plead a pattern or practice, Plaintiffs were capable of repleading to add allegations that would cure the deficiency. Accordingly, Defendants' Counsel agreed that they would not challenge my recommendation to deny the motion to dismiss for failure to allege pattern or practice, without prejudice to Defendants' right to move for summary judgment on that issue. (Tr. 53:19-55:1.)

For the foregoing reasons, I recommend that Defendants' motion to dismiss Count II be denied as to Ocwen.

**2.  Count II does not state a claim under RESPA against Deutsche Bank.**

The provisions of RESPA and Regulation X cited in Count II only apply to mortgage servicers.  12 U.S.C. § 2605(e); 12 C.F.R. §§ 1024.35, 1024.36; *see also Christiana Tr. v. Riddle*, 911 F.3d 799, 804-06 (5th Cir. 2018) (holding that a lender cannot be held vicariously liable under RESPA for the actions of its loan servicers).  Plaintiffs do not allege that Deutsche Bank acted as a mortgage servicer or that it took any actions in violation of RESPA.  (Tr. 41:19-23.)  I recommend that Defendants' motion to dismiss Count II be granted as to Deutsche Bank.

**B.  FDCPA (Counts III, IV, and V)**

Counts III, IV, and V allege that Defendants violated various provisions of the FDCPA. The FDCPA provides a cause of action to consumers who have been subject to "abusive, deceptive, and unfair debt collection practices."  *Tabb v. Ocwen Loan Servicing, LLC*, No. CV 17-1124-CFC, 2019 WL 1012004, at *3 (D. Del. Mar. 4, 2019), *aff'd in part, vacated in part, remanded,* No. 19-1754, 2020 WL 115506 (3d Cir. Jan. 10, 2020) (quoting 15 U.S.C. § 1692(a)).  To state a claim against each Defendant under the FDCPA, Plaintiffs must plausibly allege that (1) they are consumers, (2) Defendant is a "debt collector," (3) Defendant attempted to collect a debt as defined by the statute, and (4) Defendant violated a provision of the statute in attempting to collect the debt.  *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015); *Gunn v. Specialized Loan Servicing LLC*, No. 15-810-RGA, 2017 WL 976621, *4 (D. Del. Mar. 13, 2017).

Defendants moved to dismiss the FDCPA counts on the following bases: neither Deutsche Bank nor Ocwen is a "debt collector" as defined under the FDCPA; and the Complaint fails to

allege that Defendants engaged in debt collection activity within the one-year limitations period. I recommend that Counts III, IV, and V be dismissed as to Deutsche Bank but not Ocwen.

### 1. The Complaint plausibly alleges that Ocwen, but not Deutsche Bank, is a "debt collector" under the FDCPA.

The FDCPA applies only to "debt collectors." *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 365-66 (3d Cir. 2018). "Debt collectors" are statutorily defined as "any person" (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition); or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects" definition) 15 U.S.C. § 1692a(6); *Tepper*, 898 F.3d at 366. The statute specifically excludes, however, a person collecting "a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

Plaintiffs do not seriously dispute that their Complaint fails to plausibly allege that Deutsche Bank is a debt collector. It does not allege that Deutsche Bank regularly collects debt for another, *see Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), or that the "principal purpose" of its business is debt collection, *Tepper*, 898 F.3d at 370–71. Thus, the FDCPA counts should be dismissed as to Deutsche Bank

Ocwen, on the other hand, may be a debt collector under the FDCPA. Although Plaintiffs have not alleged facts plausibly suggesting that Ocwen is a debt collector under the "principal purpose" definition, Ocwen may satisfy the "regularly collects" definition. Ocwen's briefing suggested that a mortgage servicer is precluded from being considered a debt collector. But that is not the case. A mortgage servicer that regularly collects debts for another may be considered a debt collector under the FDCPA. (Tr. 30:20-31:11.) *See Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012); *Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d

85, 95-96 (D.D.C. 2016); *cf. Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1136-37 (N.D. Cal. Sept. 25, 2013). Whether Ocwen regularly collects or attempts to collect debt is an issue of fact. The activities alleged to have been taken by Ocwen in the Complaint plausibly suggest that it is a debt collector.

Moreover, Ocwen self-identified as a debt collector on many of the documents it sent to Plaintiffs. (*See* D.I. 24 at 109-117 (Ex. L), 154-156 (Ex. N), 171-180 (Ex. P), 183-187 (Ex. Q-ii), 192-197 (Ex. R), 201-202 (Ex. T), 206-207 (Ex. U-ii), 223-226 (Ex. V-ii), 240-248 (Ex. W-ii), 286-289 (Ex. X-ii), 313-321 (Ex. Y-ii), 334-336 (Ex. Z-ii), 387-398 (Ex. CC), 448-454 (Ex. JJ) ("This communication is from a debt collector attempting to collect a debt.").) Those communications also support a plausible inference that Ocwen is a debt collector. *See Tabb*, 2019 WL 1012004, at *3 (finding it plausible to infer that the defendant was a debt collector under the FDCPA where it identified itself as a debt collector in several notices).

Ocwen argues that, pursuant to 15 U.S.C. § 1692a(6)(F), it is excluded from the definition of debt collector because Plaintiffs have taken the position that they were current at the time Ocwen took over servicing their loan in 2011—notwithstanding the fact that Ocwen sent letters in 2018 asserting that Plaintiffs owed thousands of dollars when Ocwen took over from SMS. I disagree to the extent Ocwen argues that it cannot be a debt collector under the FDCPA, and cannot therefore be liable for violations, in cases where the plaintiff disputes that the debt was owed in the first place. As other courts have concluded, Ocwen "cannot escape coverage under the [FDCPA] by asserting to the court that the debt was not actually in default, despite having dunned plaintiffs for months or years in the face of plaintiffs' pleas or proof that the collector has made some error." *Bridge*, 681 F.3d at 362-63 (holding that the definition of debt collector under the

FDCPA includes those that have treated a debt as though it was in default at the time of acquisition, even if it was not in fact in default). The Complaint plausibly alleges that Ocwen is a debt collector.

### 2. Plaintiff's FDCPA counts should move forward as to Ocwen.

Ocwen also argues that the Complaint fails to allege debt collection activity within the FDCPA's one-year statute of limitations. 15 U.S.C. § 1692k. "Debt collection" is not defined under the FDCPA, but the Third Circuit has held that it covers any conduct "taken in connection with the collection of any debt." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245–46 (3d Cir. 2014) (quoting *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 265 (3d Cir.2013)). Moreover, "[a] communication need not contain an explicit demand for payment to constitute debt collection activity." *McLaughlin*, 756 F.3d at 246 (citing *Simon*, 732 F.3d at 266).

At oral argument, I asked Plaintiffs' counsel to identify at least one alleged debt collection activity by Ocwen within the statute of limitations. Plaintiffs' counsel was unable to point to any document described in the Complaint or its attachments; however, counsel contended that Ocwen continued to send mortgage account statements even after the filing of this suit, all of which constitute debt collection activity within the meaning of the FDCPA. Plaintiffs' counsel also indicated that Plaintiffs would amend the Complaint to include additional allegations about the mortgage account statements if the FDCPA claims were dismissed. For its part, Ocwen acknowledged that mortgage account statements can constitute debt collection activity[7] and that it would not require Plaintiffs to amend the Complaint solely to add allegations relating to recent mortgage account statements. (Tr. 45:7-24, 54:1-55:1.)

Thus, it appears that all parties agree that the FDCPA counts (Counts III, V, and V) are timely as to certain alleged debt collection activities occurring less than one year prior to the filing

---

[7] *See, e.g., Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 586-87 (D.N.J. 2016).

of the Complaint.  Ocwen does not point to any other deficiencies in the FDCPA counts as pleaded, nor does it make any arguments specific to any of the three counts.   Accordingly, I recommend that the Court deny Ocwen's motion to dismiss Counts III, IV, and V, without prejudice to Ocwen to raise any argument it wishes at the summary judgment stage.

### C. Breach of Contract (Count VI)

Count VI alleges that Defendants breached the Mortgage, as modified by the HAMP modification.  To adequately plead breach of contract under Delaware law, a Plaintiff must allege, (1) the existence of a contract, (2) breach of an obligation imposed by that contract, and (3) damages.  *REI Holdings, LLC v. LienClear – 001, LLC*, No. 18-1401, 2019 WL 3546881, at *6–7 (D. Del. Aug. 5, 2019).

Plaintiffs have failed to plead the existence of a contract between Plaintiffs and Ocwen.  Ocwen is not a party to the Mortgage or the HAMP modification.  Accordingly, Count VI should be dismissed as to Ocwen.

Plaintiffs have pleaded a breach of contract claim against Deutsche Bank.  Plaintiffs allege that Deutsche Bank is a party to the Mortgage, as modified by the HAMP agreement.  (Tr. 57:16-17.)  The Mortgage, which is attached to the Complaint, requires the lender, among other things, to provide Plaintiffs with an annual accounting of their escrow account.  (D.I. 24 at 58.)  And the Complaint alleges that Plaintiffs repeatedly received inaccurate escrow account statements.  (Cmpl. ¶¶ 53-54.)  The Mortgage also permits the lender to assess fees in connection with the borrower's default for the purpose of protecting the interest in the property.  (D.I. 24 at 64.)  And the Complaint alleges that Deutsche Bank improperly assessed such fees against Plaintiffs.  (Cmpl. ¶¶ 64-65.)  It also alleges that Plaintiffs suffered damages as a result of the breaches.  (*Id.* ¶ 47.)  Those allegations are sufficient to plead a breach of contract claim against Deutsche Bank.

Deutsche Bank argues that the Complaint fails to state a breach of contract claim because Plaintiffs have failed to plead that they performed their own obligations under the contract. Deutsche Bank is wrong on the law and the facts. As to the law, Deutsche Bank cited a case applying New Jersey law,[8] but it has not identified any Delaware case requiring a plaintiff to affirmatively plead that she performed her own obligations under the contract. As for the facts, Plaintiffs did plead that they "performed as required by the Mortgage." They further pleaded that they stopped making payments only because Ocwen "refused to accept" them and that their non-performance should therefore be excused. (Cmpl. ¶ 75.) That is enough to move forward at this stage.

Deutsche Bank also argues that Plaintiffs' breach of contract claim is untimely. I disagree. The Complaint contains sufficient factual allegations to suggest that, within the three-year time period prior to filing of the Complaint, Defendants claimed that the escrow account balance was negative (Cmpl. ¶ 44; D.I. 24 at 415-22 (Ex. FF), 423-31 (Ex. GG), 432-43 (Ex. HH)), improperly assessed account charges and fees (Cmpl. ¶¶ 64-65), and improperly declared Plaintiffs to be in default on their loan (*Id.* ¶ 47), all allegedly in violation of the Mortgage agreement. Because it is not clear from the face of the Complaint that the case is time barred, I recommend denying Defendants' motion to dismiss Count VI as to Deutsche Bank. Deutsche Bank is free to re-raise its statute of limitations arguments at the summary judgment stage.

For the foregoing reasons, I recommend that Count VI be dismissed as to Ocwen but not Deutsche Bank.

---

[8] *See Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

### D. Fraud (Count VII)

Count VII is a common law fraud claim. To state a claim for fraud under Delaware law, the complaint must allege:

> 1) A false representation, usually one of fact . . . ; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.

*Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008) (quoting *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). Fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

Defendants move to dismiss Count VII for failure to state a claim. I agree. Among other problems, the Complaint fails to allege that Plaintiffs justifiably relied on any representation made by Defendants. In fact, the Complaint makes it clear that Plaintiffs did not alter their behavior based on Defendants' statements. Plaintiffs allege that they continued to make their regular mortgage payments, without adjusting for the allegedly inaccurate charges. (Cmpl. ¶¶ 27, 36.) Absent facts showing reliance, the fraud claim should be dismissed. *Keystone Associates, LLC v. Fulton*, No. CV 18-1235-MN, 2019 WL 3731722, at *3 (D. Del. Aug. 8, 2019) (complaint failed to state a fraud claim because it failed to plead facts showing reliance).

For the reasons discussed above, I recommend that Count VII be dismissed.

### E. Negligent Servicing (Count VIII)

Count VIII alleges "negligent servicing." Although not entirely clear, this count appears to be a common law negligence claim against Defendants. I agree with Defendants that the claim should be dismissed.

"As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *Pinkert v. John J. Olivieri, P.A.*, No. CIV. A. 99-380-SLR, 2001 WL 641737, at *5 (D. Del. May 24, 2001). Here, all of Deutsche Bank's obligations to Plaintiffs arise from the Mortgage. While Ocwen is not a party to that agreement, any duty it has to Plaintiffs likewise arises out of that agreement. *See, e.g. Gernhart v. Specialized Loan Servicing LLC*, No. CV 18-2296, 2019 WL 1255053, at *4–5 (E.D. Pa. Mar. 18, 2019) (dismissing negligence claim against mortgage servicer because its only duty to plaintiff arose out of contract); *In re Hartman*, No. AP 15-01968 (JKS), 2017 WL 2230336, at *4 (D.N.J. May 22, 2017), *aff'd,* 763 F. App'x 160 (3d Cir. 2019); *Catalan*, 629 F.3d at 693 (affirming dismissal of negligence claims because the plaintiffs could identify no duty that had its roots outside of the note and mortgage contracts); *Audubon Eng'g Co., LLC v. Int'l Procurement & Contracting Grp., LLC*, No. CV 13-1248-LPS, 2015 WL 4084053, at *4 (D. Del. July 6, 2015), *aff'd,* 647 F. App'x 95 (3d Cir. 2016). I am unaware of any Delaware authority imposing an independent legal duty on a mortgage servicer to a borrower, and Plaintiff has not identified one. (Tr. 49:11-15.)

For the foregoing reasons, I recommend that the Court dismiss Count VIII.

### F. Breach of Implied Covenant (Count IX)

Count IX alleges breach of the implied covenant of good faith and fair dealing. Every contract governed by Delaware law is subject to the implied covenant. *Fitzgerald v. Cantor*, No. 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998). The implied covenant "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Fortis Advisors LLC v. Dialog Semiconductor PLC*, No. 9522-CB, 2015 WL 401371, at *3 (Del. Ch. Jan.

30, 2015) (internal quotations omitted).  The implied covenant does not impose a "free-floating requirement that a party act in some morally commendable sense." *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182-183 (Del. Ch. 2014), *aff'd*, 2015 WL 803053 (Del. Feb. 26, 2015).

Application of the implied covenant is a "limited and extraordinary legal remedy." *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010).  It is "rarely invoked successfully." *MHS Capital LLC v. Goggin*, No. CV 2017-0449-SG, 2018 WL 2149718, at *11 (Del. Ch. May 10, 2018).  To plead a claim for breach of the implied covenant "a litigant must allege a specific obligation implied in the contract, a breach of that obligation, and resulting damages." *Fortis Advisors*, 2015 WL 401371, at *3.  The implied covenant cannot be used when the contract already speaks to the obligation at issue. *MHS Capital*, 2018 WL 2149718, *12; *Fisk Ventures, LLC v. Segal*, No. 3017-CC, 2008 WL 1961156, at *10 (Del. Ch. May 7, 2008) ("[B]ecause the implied covenant is, by definition, implied, and because it protects the spirit of the agreement rather than the form, it cannot be invoked where the contract itself expressly covers the subject at issue.").  "The doctrine thus operates only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer." *Stewart v. BF Bolthouse Holdco, LLC*, No. CV 8119-VCP, 2013 WL 5210220, at *15 (Del. Ch. Aug. 30, 2013).

Plaintiffs' breach of the implied covenant claim mirrors its breach of contract claim. Because the implied covenant claim does nothing more than duplicate the conduct alleged in the breach of contract claim, it must be dismissed. *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, No. CV 2017-0500-JRS, 2018 WL 2727542, at *9 (Del. Ch. June 6, 2018) (dismissing, to the extent alleged, the breach of the implied covenant claim because "it is improperly duplicative of [plaintiff's] contract claims"); *Narrowstep, Inc. v. Onstream Media Corp.*, No. CIV.A. 5114-VCP,

2010 WL 5422405, at *11–12 (Del. Ch. Dec. 22, 2010) (dismissing plaintiff's implied covenant claims because they were duplicative of the contract claims and plaintiff could not state a separate claim for the implied covenant that was not already covered by the contract at issue).

Accordingly, I recommend that Defendants' motion to dismiss Count IX be GRANTED.

### G. Unjust enrichment (Count X)

Count X alleges unjust enrichment. "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec*, 991 A.2d at 1130. "If a contract comprehensively governs the parties' relationship, then it alone must provide the measure of the plaintiff's rights and any claim of unjust enrichment will be denied." *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, No. CIV. A. 3099-VCN, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009).

I agree with Defendants that Count X should be dismissed. Among other problems, the Complaint fails to plausibly allege an enrichment and an impoverishment. Despite Defendants' alleged actions, Plaintiffs never made payments for more than they believed they owed under the Note and Mortgage. Plaintiffs allege that Defendants have improperly assessed additional fees and charges, but Plaintiffs never paid them. Thus, there has been no impoverishment or enrichment. I recommend that Count X be dismissed as to both Defendants.

## III.    CONCLUSION

For the foregoing reasons, I recommend that Defendants' motion to dismiss be GRANTED-IN-PART and DENIED-IN-PART:

1. As to Counts I, VII, VIII, IX, and X it should be GRANTED as to both Defendants.

2. As to Counts II, III, IV, and V it should be GRANTED as to Deutsche Bank and DENIED as to Ocwen; and

3. As to Count VI, it should be DENIED as to Deutsche Bank and GRANTED as to Ocwen.

I further recommend that the dismissals be without prejudice and that Plaintiffs be granted leave to amend within 21 days.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.   Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.   Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: January 24, 2020                    _____
                                           The Honorable Jennifer L. Hall
                                           United States Magistrate Judge