# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Dean Zinetti and Angela K. Zinetti | } |
| | } |
| Plaintiffs, | } Civil Action No.: 1:19-cv-01279-LPS-JLH |
| | } |
| v. | } |
| | } |
| Deutsche Bank National Trust Company, | } |
| as Trustee for Saxon Asset Securities Trust | } |
| 2007-3, Mortgage Loan Asset Backed | } |
| Certificates, Series 2007-3, and | } |
| Ocwen Loan Servicing, LLC | } |
| | } |
| Defendants. | } |

**PLAINTFFS' RESPONSE TO DEFENDANTS'**
**FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, Defendants Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2007-3, Mortgage Loan Asset Backed Certificates, Series 2007-3 ("Deutsche Bank") and Ocwen Loan Servicing, LLC ("Ocwen") request that Plaintiffs, Dean Zinetti and Angela K. Zinetti, answer the following Interrogatories within thirty (30) days of service.

**DEFINITIONS**

1. "Identify," when used in reference to a natural person, means that you shall state the person's: full name; present or last known residential address; present or last known business address; and the person's job position at the times relevant to the answer.

2. "Identify," when used in reference to a document, means that you shall state the following information: (a) the date of the document; (b) the title (if any) of the document; (c) the author or originator of the document; (d) the persons or entities to whom the document is addressed; (e) the nature of the document (e.g., letter, memorandum); (f) the number of pages of

the document; (g) a brief summary of the contents of the document; and (h) if the document is not now in your possession, the identity of its present or last custodian and its location. In lieu of such information, copies of documents may be identified and furnished simultaneously with the filing of answers to these interrogatories.

3. "Plaintiff" "You" and "your" refers to Plaintiffs, Dean Zinetti and Angela K. Zinetti.

4. "Deutsche Bank" refers to Defendant Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2007-3, Mortgage Loan Asset Backed Certificates, Series 2007-3.

5. "Ocwen" refers to Defendant Ocwen Loan Servicing, LLC.

6. "Lawsuit" refers to the above-captioned action titled *Dean Zinetti and Angela K. Zinetti v. Ocwen Loan Servicing, LLC, et al.*, pending in the United States District Court for the District of Delaware, No. 1:19-cv-01279.

7. "Complaint" refers to the Complaint You filed in this Lawsuit on or about June 5, 2019.

8. "Loan" refers to the mortgage loan at issue in this Lawsuit, which was extended by Saxon Mortgage, Inc. to You and executed by You on May 10, 2007, and serviced by Ocwen.

9. "FDCPA" refers to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and includes all regulations relating thereto.

10. "RESPA" refers to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, and includes all regulations relating thereto.

11. The "Mortgage" refers to the mortgage executed by You on May 10, 2007, against the property located at 16492 Old Furnace Road Georgetown, DE 19947 and in favor of Saxon Mortgage, Inc., as security for the Loan.

**INTERROGATORIES**

1. Identify all person(s) answering these interrogatories and/or providing information in connection with answering these interrogatories.

**ANSWER:** **Angela Zinetti**
**16492 Old Furnace Road**
**Georgetown, DE  19947**

**Dean Zinetti**
**16492 Old Furnace Road**
**Georgetown, DE  19947**

2. Identify all person(s) who are known or believed to have any knowledge or information concerning the facts, claims and/or circumstances alleged in Your Complaint and, for each such person identified, provide a brief description of the knowledge or information he or she has or may have.

**ANSWER:**
- **Angela and Dean Zinetti – have knowledge of agreements entered into, payments made, the misapplication of payments by Defendants, and their damages.**

3. Identify each and every document You intend to introduce into evidence at the time of trial.

**ANSWER:  Plaintiffs have not determined all of the document they intend to introduce into evidence at this time.  Nonetheless, such list will probably include all the Complaint exhibits and documents referenced in the Expert Witness Report of Bernard Jay Patterson, CFE.**

4. Identify all person(s) You intend to call as fact witnesses at the trial of this Lawsuit and state the substance of the expected testimony that each such witness is expected to give.

**ANSWER:**
- **Angela and Dean Zinetti – have knowledge of agreements entered into, payments made, the misapplication of payments by Defendants, and their damages.**
- **Sony Prudent, Senior Loan Analyst with Ocwen Financial Corporation, who allegedly has knowledge concerning the servicing of Plaintiffs' loan account, payment history and prior legal action between the Zinettis and Ocwen.**
- **Other representatives of Ocwen who have corresponded with Plaintiffs regarding their account.**

5. Identify all person(s) You expect to call as expert witness(es) at the trial of this Lawsuit. For each such person, state the field in which he or she is to be offered as an expert, a summary of his or her qualifications in the field of expected testimony (or produce a current curriculum vitae), the subject matter to which he or she is expected to testify, the substance of the

3

facts and opinions to which such person is expected to testify and a summary of the grounds for each such opinion, the full caption of each case in which he or she testified within the last five (5) years, and the title, publisher, and date of any publication of which he or she was an author, co-author, or contributor.

**ANSWER:** **Bernard Jay Patterson, CFE**
**626 Quapaw Avenue**
**Hot Springs, AR 71901**

**Bernard Jay Patterson is a Certified Fraud Examiner. He has a Bachelors of Science Degree in Accounting from University of Arkansas, Little Rock. A copy of his Curriculum Vitae was included with the Expert Report submitted on September 4, 2020. Mr. Bernard Jay Patterson will testify regarding the matters in his Expert Report submitted on September 4, 2020, and such other matters as may be requested by Plaintiff within Mr. Patterson's expertise.**

6. For each communication (verbal, written, or otherwise) You have had with Ocwen, Deutsche Bank or any of their employees, agents, or representatives, concerning the Mortgage and/or the Loan from March 6, 2013 to the present, set forth the date, time, and location of the communication, the identities of all persons who participated in the communication, the identities of all persons who were present or otherwise saw or heard the communication, if the communication was written, recorded, or reduced to writing, the identity of such document(s) or recording(s), and the substance of the communication.

**ANSWER: Plaintiffs object to this request on the grounds that it is vague, overbroad, unduly burdensome. However, each of the communications occurred between either Angela Zinetti, or Dean Zinetti, with various Ocwen employees. The exhibits attached to Plaintiffs' Complaint identify specific Ocwen employees the Plaintiffs corresponded with.**

7. Identify all persons or entities You communicated with in any way from March 6, 2013 to the present concerning the Mortgage and/or the Loan, and set forth the date, time, and location of the communication, the identities of all persons who participated in the communication, the identities of all persons who were present or otherwise saw or heard the communication, if the communication was written, recorded, or reduced to writing, the identity of such document(s) or recording(s), and the substance of the communication.

4

**ANSWER: Plaintiffs object to this request on the grounds that it is vague, overbroad, unduly burdensome. However, each of the communications occurred between either Angela Zinetti, or Dean Zinetti, with various Ocwen employees and with Plaintiffs' counsel. Defendants can review the Complaint exhibits to identify specific Ocwen employees the Plaintiffs corresponded with.**

8. State the name, address, and telephone number of every person or entity with which You have applied for credit, from which You have received credit, or which has reviewed your credit history, report, or rating from March 6, 2013 to the present, and for each person or entity identified state to whom the application was made, the type and date of credit transaction involved, the terms of the application, the amount You sought to finance, the disposition or outcome of the application, and the basis or reason given for any denial.

**ANSWER: Plaintiffs object to this request on the grounds that it is vague, overbroad, unduly burdensome. However, the Plaintiffs were denied credit by the following entities, and Plaintiffs will produce credit reports which identify Hard Inquiries and Soft Inquiries made by creditors.**

**Credit Card Denials:**
- **USAA Credit Card –** Ms. Zinetti's denied credit increase in 12/2014
- **Chase Disney -** Ms. Zinetti denied credit on 5/23/17
- **Home Depot -** Mr. Zinetti denied credit card on 08/02/17
- **USAA Consumer Loan –** Mr. Zinetti denied credit on 10/31/17
- **Bank of America AAA Credit Card –** Mr. Zinetti denied credit in 11/2018

9. With respect to each application for or extension of credit identified in response to Interrogatory No. 8, state whether You allege that any action and/or inaction of Deutsche Bank or Ocwen affected such application for or extension of credit in any way. If so, please:

    a. specify what effect such action and/or inaction purportedly had, including but not limited to, the denial of credit, any increase in the applicable interest rate (and the amount of such increase, if any), any variance in any of the terms of the transaction and the resultant cost, if any, to You;

    b. identify all persons with knowledge of the foregoing and state the details of their knowledge; and

    c. identify all documents relating thereto.

| CREDIT COMPANY | OCWEN RESPONSIBILITY | PERSONS WITH KNOWLEDGE | RELEVANT DOCUMENTS |
|---|---|---|---|
| USAA Credit Card | Reporting account delinquent despite dispute | Angela Zinetti | Complaint Exhibit S- USAA 12/9/2014 letter to Angela Zinetti denying request for credit increase |
| Chase Disney | Reporting account delinquent despite dispute | Angela Zinetti | To be provided with production of documents |
| Home Depot | Reporting account delinquent despite dispute | Dean Zinetti | To be provided with production of documents |
| USAA Consumer Loan | Reporting account delinquent despite dispute | Dean Zinetti | To be provided with production of documents |
| Bank of America AAA Credit Card | Reporting account delinquent despite dispute | Dean Zinetti | Complaint Exhibit BB- Bank of America 11/23/2018 letter to Dean Zinetti denying application for AAA Credit Card |

10. Describe all facts which support or otherwise relate to your contention that Ocwen violated RESPA.

**ANSWER: Plaintiffs sent Ocwen 7 Notices of Error and Requests for Information between 2014 and 2018. While Ocwen sent letters purportedly in response to the seven notices of error (See Detailed Summary of Notice of Error and Request for Information Correspondence attached to Complaint as <u>Exhibit AA</u>), it appears that Ocwen did not put proper policies and procedures in place reasonably designed to enable it to investigate, respond to, and make the corrections requested by the Plaintiffs and required under the Settlement Agreement. For instance, Ocwen repeatedly noted that "the balances reflecting on the loan are based on information from the prior servicer". It further noted, "If you still believe the aforementioned escrow balance is inaccurate, please provide us with relevant documents supporting your claim." However, no matter what supporting documents Plaintiffs provided to Ocwen, Ocwen failed to even acknowledge its receipt of any such information in its responses. Rather, Ocwen consistently refused to consider the points raised by these notices and instead sent contradictory and internally inconsistent "responses" that failed to satisfy the requirements of Regulation X, 12 C.F.R. § 1024.35(e). For, example, in Ocwen's May 2018 response to the April 2018 LSCD Letter, Ocwen indicated that the Loan had originated with Lepinski. This is false, the Loan originated with SMS and the second position Lepinski loan had no relationship to the Loan Ocwen is servicing.**

**Ocwen's failure to provide accurate information in its responses to Plaintiffs' notices of error demonstrate that Ocwen did not conduct a "reasonable investigation" before sending a cursory response to Plaintiffs claiming no error was found. Its actions demonstrate a pattern and practice of noncompliance, in violation of 12 U.S.C. §§ 2605(e), Regulation X, 12 C.F.R. §§ 1024.35 and 1024.36.**

11.   Describe all facts which support or otherwise relate to your contention that Ocwen violated the FDCPA.

**ANSWER:  Fair Debt Collection Practices Act ("FDCPA") against Ocwen, as a "debt collector"**

    a.  **Unfair Practices**

Ocwen has continually sought to impose inappropriate fees and charges against the Zinettis, in violation of section 1692(f) of the FDCPA.  The 5/2018 Payoff Quote attached to the Complaint as **Exhibit W-ii** and the 10/2018 Mortgage Reinstatement Quote attached to the Complaint as **Exhibit W-iii** which were issued only 5 months apart, show that the Zinettis' account was charged with the alleged costs and fees listed below, which arose because of:

- **Defendant's own mismanagement of the Zinetti's account, including, but not limited to, its failure to properly reconcile the escrow account post settlement, its failure to accurately apply payments when received, its application of principal and interest payments to the expenses listed below, its rejection of ongoing mortgage payments, its failure to meaningfully respond to notices of error; and**
- **Alleged errors made by the original mortgage holder's own counsel on the Mortgage, which led to Deutsche's filing of a Mortgage Reformation case against the Zinettis in Chancery Court in December 2017, prior to Deutsche's intended foreclosure proceedings.**

| Description | 5/2018 Payoff Quote | 10/2018 Reinstatement Quote |
|---|---:|---:|
| Property Inspection Fee | $601.50 | $601.50 |
| Property Inspection Fee |  | $58.00 |
| Title Report Fee | $520.00 | $520.00 |
| Civil Litigation | $375.00 | $805.00 |
| Court |  | $551.50 |
| Obtain Court Docs, Trustee Records | $1,500.00 | $1,500.00 |
| Certified Mail Cost | $9.56 | $9.56 |
| Satisfaction Cost | $46.00 |  |
| Sheriff Process |  | $65.00 |
| Foreclosure Fee | $705.00 |  |
| Foreclosure Expense | $562.00 |  |

7

| | | |
|---|---:|---:|
| Late Charges | $610.28 | $610.28 |
| **TOTAL** | **4,929.34** | **4,720.84** |

**It is notable that the $46.00 "Satisfaction Cost", the $705 "Foreclosure Fee" and the $562 "Foreclosure Expense" only showed up in the 5/2018 Payoff Quote, reflecting Defendants' attempt to collect inflated fees and costs from the Zinettis in May 2018**.

**The above actions prevented Ocwen from properly applying principal payments when made, and also caused the Plaintiffs to be charged more overall interest**.

      b.   **Failure to Cease Collections on Disputed Debt**

**Despite the NOEs sent to Ocwen on April 4, 2018, June 8, 2018, August 27, 2018, and November 30, 2018 disputing the outstanding debt amount, including costs and fees, Ocwen failed to cease collection in violation of 15 USC §1692b(b). Specifically, Ocwen sent the Zinettis the following Mortgage Statements, which according to Judge Hall's Report and Recommendations, in and of themselves constitute debt collection activities:**

| DATE | See EXHIBITs to May 22, 2020 from Gauthier to Polesky and Buzzetta |
|---|---|
| June 28, 2018 | **Exhibit F** |
| July 17 2018 | **Exhibit G** |
| August 17, 2018 | **Exhibit H** |
| September 17, 2018 | **Exhibit I** |
| October 17, 2018 | **Exhibit J** |
| November 19, 2018 | **Exhibit K** |
| December 17, 2018 | **Exhibit L** |
| January 17, 2019 | **Exhibit M** |
| February 18, 2019 | **Exhibit N** |
| March 18, 2019 | **Exhibit O** |
| April 17, 2019 | **Exhibit P** |

**Moreover, each of the Ocwen Mortgage Statements includes a warning under the "Important Information" section stating: "Important Notice: This communication is from a debt collector attempting to collect a debt, any information obtained will be used for that purpose."**

      **Additionally, after PHH Mortgage, an entity related to Ocwen, became the servicer of the account effective June 1, 2020, PHH sent the Zinettis the following Mortgage Statements despite the commencement of this litigation on June 5, 2019**:

8

| DATE | See EXHIBITs to May 22, 2020 from Gauthier to Polesky and Buzzetta |
|---|---|
|  |  |
| July 16, 2019 (PHH) | **Exhibit Q** |
| August 16, 2019 (NewRez) | **Exhibit R** |

**And, the July 16, 2019 PHH Mortgage Statement states: "Important Information[:] Please note your loan has been referred to an attorney to start foreclosure proceedings." Notably, other correspondence from PHH reflects that erroneous account information was still being conveyed by Ocwen to the new servicer, because the notice of transfer stated that as of June 1, 2020 the principal and interest payment amounts were $925.93 per month, and the interest rate was 3%, contrary to the terms set forth in the HAMP Agreement.**

      **c.  Failure to Report Debt as Disputed Debt**

**Ocwen has failed to report the mortgage debt as disputed to the credit reporting agencies and continually reported each of the Zinettis as being 180 delinquent during each of the 12 months preceding the filing of the Complaint, as reflected in the credit reports attached to the May 22, 2020 letter from Gauthier to Polesky and Buzzetta as Exhibit S, in violation of section 1962(e) of the FDCPA.**

12. Describe all facts which support or otherwise relate to your contention in Paragraph 63 of the Complaint that Ocwen "has repeatedly threatened them and has refused to accept Plaintiffs' payments since July 2015."

**ANSWER: Ocwen has repeatedly threatened the Zinettis "with foreclosure" and has refused to accept Plaintiffs' payments since July 2015. (See August 2011 Foreclosure Letter attached to the Complaint as Exhibit II and November 25, 2015 Foreclosure Letter attached to the Complaint as Exhibit JJ).**

**Starting in July 2015, Ocwen held 3 of Plaintiffs' successive mortgage payments in suspense, and then returned the payments to Plaintiffs, as it threatened to initiate foreclosure proceedings against the Plaintiffs. Thereafter, Ocwen refused to accept further monthly payments, requiring full payment of the alleged outstanding balance before reinstating the Loan.**

**In a letter dated August 18, 2015 ("August 2015 Ocwen Letter" attached hereto as Exhibit T), Ocwen simply stated the reason for the return of Plaintiffs' August mortgage payment was "Demand/Demand Expired" without further explanation.**

**Furthermore, the July 16, 2019 PHH Mortgage Statement states: "Important Information[:] Please note your loan has been referred to an attorney to start foreclosure proceedings." (See July 16, 2019 PHH Mortgage Statement").**

13.     Identify the date on which You contend You last remitted a payment on the Loan or the Mortgage no later than thirty (30) days after the date on which such payment was first due.

**ANSWER:  The Zinettis made an August 2015 payment on time, which was returned on August 3, 2015 and resubmitted, but returned again on August 13, 2015.  The Zinettis sent a September 2015 payment which returned on September 2, 2015 and resubmitted, but returned again on September 14, 2015.  The Zinetti's sent an October 2015 payment, which was returned on October 16, 2015.**

14.     Identify any and all attempts by You to make a payment on the Loan, the Mortgage, the property taxes for the property at issue, or homeowner's insurance on the property at issue since May 1, 2015.

**ANSWER:  The payments made for May, June and July cleared on the 1st of each of those months. However, the August, September and October payments were returned to the Zinettis, and the Zinettis began setting aside all payments, starting with the August, September and October payments that were returned to them.  Such payments and the set aside payments include principal, interest, property tax and homeowner's insurance.**

15.     If You contend that Ocwen and/or Deutsche Bank is liable to You for damages, identify the precise amount of damages and the method of calculation, the dates which the alleged damages occurred, and identify all documents which relate to or contain information about these alleged damages. If You contend that You have experienced any sort of physical, mental or emotional distress as the result of any alleged action or inaction of the parties, describe with particularity each symptom You claim to have experienced, the frequency and severity of each symptom, the names of all persons with knowledge of the foregoing and the details of their knowledge, and state whether You ever sought medical treatment or counseling prior to or after the alleged wrongful actions or inactions of Ocwen, Deutsche Bank, or any other person or entity, including without limitation, psychiatric or psychological treatment or counseling for any such alleged physical, mental or emotional distress. If so, identify the date(s) on which You sought such treatment or counseling, how often You sought such treatment or counseling, the name, business address and telephone number of each medical professional You consulted with and the diagnosis, if any, that resulted from such treatment or counseling.

10

**ANSWER:  Plaintiffs provide the following preliminary information.**

| Category | Description | Amount |
|---|---|---|
| **Actual Principal Balance as of July 1, 2015, including HAMP Principal Forgiveness Program payments** | The Zinettis were entitled to a principal reduction of $83.33 for every month they made a payment on time for a maximum of 5 years.  If Ocwen and Deutsche had managed their mortgage account correctly, the Zinettis would have earned the full $5,000 in credit by January 2015, as well as the $5,000 in forgiveness in year 6.  Furthermore, the Expert Report shows that if all other payments were properly applied the outstanding principal balance as of July 1, 2015 should have been $221,295.74 rather than $232,432.36. | $11,136.62 |
| **Principal Reduction from August 1, 2015 to October 30, 2020** | Amount of Additional Principal the Zinetti's would have paid down through October 30, 2020 if Ocwen had accepted and correctly applied payments | $17,718.83 |
| **Actual Damages:** | 1. **Time missed from work**; lost wages<br>   • 3/7/2014 meeting in Dover office<br>   • 4/24/2014 meeting between Ms. Zinetti and SF<br>   • 8/24/2015 meeting with SF<br>   • 12/11/2017 meeting with FG in Dover office<br>   • 3/13/2018 meeting with FG in Dover office<br>   • 1/17/2020 Mr. Zinetti attendance at oral argument in Wilmington<br>2. **Lost Wages from work trips Mr. Zinetti was not able to take in current job** due to delay with security clearance impacted by incorrect credit reports & pending lawsuit<br>3. **Lost Job opportunities for Mr. Zinetti:**<br>   • **Lockheed Martin** in 2010 $120,000/yr<br>   • **Flight Safety** in 2011 $60,000/yr<br>4. **Phone calls and E-mail Correspondence** with LSCD<br>5. **Copying and/or faxing costs**<br>6. **Postage Fees:**<br>7. **Mileage on cars** from meetings with LSCD attorneys and court hearing**:**                                                         **$335.37 total**<br>   • 84 miles (42 miles each way between home and Dover office)<br>     ○ 84 miles @.56 per mile for 2 trips in 2014=  $94.00<br>     ○ 84 miles @.575 per mile for 1 trip in 2015 = $48.30<br>     ○ 84 miles @ .535 per mile for 1 trip in 2017= $44.94<br>     ○ 84 miles @ .545 per mile for 1 trip in 2018= $45.78<br>   • 178 miles (89 miles each way between home and Federal Ct)<br>     ○ 178 miles @.575 per mile for 1 trip in 2020=$102.35<br>8. **Emotional Distress**: Seeing VA therapist due to mortgage stress and increased anxiety<br>   • stress, mental anguish, loss of sleep, depression, anxiety, embarrassment and humiliation, fear of losing home, stress from negative impact on credit rating, negative impact on job prospects, negative impact on children who also worry about losing home and having to move.<br>9. **Credit Card Denials:**<br>   • **USAA Credit Card** – Ms. Zinetti's denied credit increase in 12/2014<br>   • **Chase Disney** - Ms. Zinetti denied credit on 5/23/17<br>   • **Home Depot** - Mr. Zinetti denied credit card on 08/02/17<br>   • **USAA Consumer Loan** – Mr. Zinetti denied credit on 10/31/17 | To be determined |

11

| | | |
|---|---|---|
| | • **Bank of America AAA Credit Card** – Mr. Zinetti denied credit in 11/2018 | |
| **Fair Debt Collection Practices Act:** | Statutory Damages under 15 U.S.C. §1692k(a)(2), for: 1) Unfair Practices, 2) failure to correct account History, and 3) failure to Cease Collections on Disputed Debt | $2,000.00 |
| **Attorneys' Fees and Costs:** | *Susan Flood: 2/27/2014 to 5/3/2016;   28.25 hours*<br>*Susan Flood: 6/21/2016 to 6/6/2017;   4.00 hours*<br>*Cathie DiLorenzo: 10/7/2015;   .50 hours*<br>*Peter Sweeney: 6/6/2017 to 11/14/2017;   10.25 hours*<br>*Cynthia DePue: 7/26/2017 to 7/22/2019;   7.00 hours*<br>*Frances Gauthier: 8/24/2017 to now; 360.00 hours*<br>**Attorney hours = 410.00 hours**<br><br>*Beverly Bumgarner: 2/27/2014 to 4/2/2014;  1.50 hours*<br>*Isaac K. Otu III: 7/8/2014;   .25 hours*<br>*Mackenzie Hickey: 11/14/2014 to 1/7/2016;  9.50 hours*<br>*Michael Gula: 9/2014;   .50 hours*<br>*Michael Gula: 1/16/2018 to present:   42.45 hours*<br>**Paralegal hours = 54.20 hours**<br><br>**Costs (filing fee litigation expense and postage) : $311.60**<br><br>**Litigation Estimate from present to end of trial:**<br>xxx attorney hours<br>xxx paralegal hours | *$102,500.00<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>*$4,065.00<br><br><br>*$311.60<br><br>*Based on just time through present |
| **Expert Report** | Report prepared by Bernard Jay Patterson | Awaiting bill |
| **Real Estate Settlement Procedures Act:** | $2,000 per failure to adequately respond to each of 4 Notices of Error and Requests for Information (or 7 NOE's under Continuing Violation Doctrine) | $ 8,000.00 Or $14,000.00 |
| **Ocwen Inflated Fees and Costs:** | Property Inspection Fee:  $  601.50<br>Property Inspection Fee:  $    58.00<br>Title Report Fee:  $  520.00<br>Civil Litigation Fee:  $  805.00<br>Court:  $  551.50<br>Obtain Court Docs, Trustee Records" Fee:  $1,500.00<br>Certified Mail Cost:  $      9.56<br>Satisfaction Cost:  $    46.00<br>Sheriff Process:  $    65.00<br>Foreclosure Fee:  $  705.00<br>Foreclosure Expense:  $  562.00<br>Late Charges:  $  610.28 | $ 6,033.84 |
| **Punitive Damages** | | To be determined |
| **TOTAL:** | | |

16. If You claim willful violations of the RESPA and the FDCPA against Ocwen, identify the complete factual and legal basis for such claims, including, but not limited to, a description of each alleged act and/or omission by Ocwen which You contend supports your claim for punitive damages, the date each such act and/or omission occurred, any and all laws, regulations or statutes (including specific subsections) relied upon to support such a claim, any person or entity that contributed to or caused such violations, and identify all persons with knowledge of the foregoing and the details of their knowledge.

**ANSWER:  Plaintiffs object to this request on the grounds that it is overbroad and unduly burdensome.  Nonetheless, Plaintiff have already provided applicable responses to Requests 10 and 11 above.**

17. Identify every complaint, dispute, or other communications (including electronic communications) You made with Ocwen and/or any credit reporting agency concerning the information contained on any of your credit reports from May 17, 2011 to the present, and for each complaint or dispute, state the entity to which You submitted the complaint or dispute, to whom the communication was made, the date on which You submitted the complaint or dispute, the basis of the complaint or dispute, and whether Ocwen, and/or any credit reporting agency made any corrections in response to any complaint or dispute.

**ANSWER:  On August 28, 2017 both Mr. and Mrs. Zinetti submitted letters to Equifax LLC, Experian, and TransUnion disputing information in their reports.  Plaintiffs received responses from Equifax on September 25, Experian on September 27, and TransUnion on September 28. See Letters from Agencies.  Each of the Plaintiffs also received updated credit reports from Experian on January 16, 2020.   These documents will be provided with the production of documents.**

18. Identify all damages You sustained as a result of Ocwen's responses to the Notice of Error identified in Your Complaint.

**ANSWER:  Plaintiffs object to this request on the grounds that the damages have already been set forth in response to Request 15 above, and a further breakdown of such damages is not proportional to the needs of this case.**

13

19. Identify all information submitted in Your Notices of Error submitted after April 1, 2018, which was not contained in a Notice of Error sent before April 1, 2018.

**ANSWER:**

| April 4, 2018<br>**Fourth NOE – See Complaint <u>Exhibit W-i</u>** | • Noted that errors were made in documenting Plaintiffs payment history when servicing was transferred from SMS to Ocwen that have not been corrected<br>• Misapplied payments; continually held funds in suspense, assessed late charges, paid itself late fees and other fees<br>• Stopped accepting payments in July 2015<br>• Requested documents, including list of all charges, corrected Life of Loan History, and reinstatement and payoff figures |
|---|---|
| June 11, 2018<br>**Fifth NOE – See Complaint <u>Exhibit X-i</u>** | • Complained that information requested by letter and phone was not provided yet<br>• Noted Ocwen's $47,408.02 Reinstatement Figure was **$2,796.58** over the $44,611.44 figure calculated by Plaintiffs<br>• Requested individualized itemized breakdown of principal payment, interest, escrow payment, and suspense balance figures |
| August 27, 2018<br>**Sixth NOE – See Complaint <u>Exhibit Y-i</u>** | • Detailed history of SMS and Ocwen mishandling of account<br>• Noted failure to make corrections to Account History in accordance with Settlement Agreement<br>• Highlighted specific errors, including fees "assessed by reason of a claimed delinquency in payment"<br>• Highlighted Ocwen's failure to reconcile escrow account, and irregular escrow statements<br>• Demanded corrections |
| November 30, 2018<br>**Seventh NOE – See Complaint <u>Exhibit Z-i</u>** | • Noted errors in Sixth NOE Response<br>• Provided copy of Plaintiffs' mortgage payment records (See **Exhibit G**)<br>• Highlighted history of errors and Ocwen's failure to make corrections<br>• Demanded corrections<br>• Demanded that Payment Reconciliation History be corrected to ensure that "*Date Payment Received*" and "*Amount Applied/Assessed*" columns match the "*Date Cleared*" and "*Amount*" columns in the Plaintiffs' Mortgage Payment Records. |

20. Identify all actions by Ocwen which constitute a pattern or practice of non-compliance with RESPA.

**ANSWER:  The Complaint details Ocwen's pattern and practice of failing to comply with the requirements of RESPA and Regulation X.  First, the Complaint describes and attaches detailed exhibits demonstrating how Plaintiffs repeatedly sent NOEs and RFIs to Ocwen in an attempt to get Ocwen to correct the obvious inaccuracies in Ocwen's accounting and records. Exhibit AA to the Complaint (Detailed Summary of the Notice of Error and Request for Information Correspondence) also explains in detail how Ocwen repeatedly failed to address the substance of Plaintiffs' NOEs/RFIs, instead relying on inconsistent or unsupported canned responses in a futile attempt to brush aside Plaintiffs' legitimate questions and concerns. Plaintiffs also brought to the Court's attention the ongoing matter of *Consumer Financial Protection Bureau v. Ocwen et al.* (Case No. 9:17-CV-80495) to further alert the Court to the fact that noncompliance with RESPA is not just Ocwen's pattern and practice, but is in fact Ocwen's modus operandi.**

21. Identify all facts supporting your contention that Ocwen "regularly collects debts for another."

**ANSWER: Ocwen is a service provider for mortgage companies. Its own mortgage statement form includes a warning under the "Important Information" section stating: "Important Notice: This communication** *is from a debt collector attempting to collect a debt***, any information obtained will be used for that purpose."**

(*emphasis* added).

22. Identify all facts supporting your contention that Ocwen's principal purpose is the collection of debt.

**ANSWER: Ocwen is Deutsche Bank's service provider, and it became such service provider at a time after Ocwen's predecessor, Saxon Mortgage Service, Inc., had asserted that the Zinettis' account was delinquent.**

23. Identify any action of Deutsche Bank that You allege violated the HAMP modification or Mortgage.

**ANSWER: Plaintiffs entered into a loan contract with Deutsche's predecessors, Saxon Mortgage, Inc. (SMI) pursuant to which SMI loaned money to the Plaintiffs, Plaintiffs agreed to pay principal and interest through the loan maturity date, SMI agreed to process the payments in accordance with the Mortgage, with the ultimate goal of payoff and satisfaction of the loan. SMI assigned the loan documents and its obligations to Deutcshe, but Deutsche and its agents breached those obligations, causing the Zinettis both economic and non-economic damage.**

Dated:  October 19, 2020			LEGAL SERVICES CORPORATION OF
						DELAWARE, INC.

						/s/  Frances Gauthier
						Frances Gauthier (DSB No. 3390)
						100 West 10th Street, Suite 203
						Wilmington, DE  19801
						Telephone: (302) 575-0408
						Facsimile: (302) 575-0478
						francesgauthier@lscd.com
						*Counsel for Plaintiffs*

15

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Dean Zinetti and Angela K. Zinetti | } |
| | } |
| Plaintiffs, | } Civil Action No.: 1:19-cv-01279-LPS |
| | } |
| v. | } |
| | } |
| Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2007-3, Mortgage Loan Asset Backed Certificates, Series 2007-3, and Ocwen Loan Servicing, LLC | } } } } |
| | } |
| Defendants. | } |

## NOTICE OF SERVICE OF PLAINTIFFS' RESPONSE
## <u>FIRST SET OF INTERROGATORIES</u>

The undersigned attorney hereby certifies that on October 19, 2020, a true and correct copy of *Plaintiffs' Response to Defendants' First Set of Interrogatories* was served via email on:

Joelle Eileen Polesky, Esq.  
Stradley Ronon Stevens & Young, LLP  
1000 N. West Street  
Suite 1278  
Wilmington, DE 19801  

Walter J. Buzzetta, Esq.  
Stradley Ronon Stevens & Young, LLP  
2000 K Street, N.W.  
Suite 700  
Washington, DC 2006-1871  

and a true and correct copy of this *Notice of Service of Plaintiffs' Response to Defendants' First Set of Interrogatories* was filed and served via CM/ECF on all counsel of record.

Dated: October 19, 2020

LEGAL SERVICES CORPORATION OF DELAWARE, INC.  
/s/ *Frances Gauthier*  
Frances Gauthier (DSB No. 3390)  
100 West 10th Street, Suite 203  
Wilmington, DE 19801  
Telephone: 302-575-040/Facsimile: 302-575-0478  
francesgauthier@lscd.com  
*Counsel for Plaintiffs*